**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | NO: 4:04CR00041  SWW |
| | * | |
| VS. | * | |
| | * | NO: 4:04CR00016  SWW |
| | * | |
| BOBBY KEITH MOSER | * | |


**ORDER**

Before the Court is a motion by Petitioner Barry J. Jewell ("Jewell") to vacate seizure

warrants and forfeiture orders and for summary judgment (docket entry #156, 4:04CR00041,

docket entry #147, 4:04CR00016).  The Government has filed a response in opposition (docket

entry #4:04CR00016), and Jewell has filed a reply (docket entry #159, 4:04CR00041, docket

entry #152, 4:04CR00016) .  After careful consideration, and for the reasons that follow,

Jewell's motion will be granted.

**I.**

On August 6, 2004, Defendant Bobby Keith Moser ("Moser") entered a plea of guilty to

all counts set forth in a superseding information charging him with mail fraud, money

laundering, and interstate transportation of stolen property.[1]   Moser, an attorney, admitted that

from 1996 to 2003, he defrauded his clients of money held in his law firm's client trust account,

---

[1]The mail fraud and money laundering charges were joined in a case originally assigned
to Judge Moody--4:04CR00041 SWW.  Moser pleaded guilty to additional charges for tax fraud
and conspiracy in another case, 4:04CR00016 SWW, and the criminal cases against Moser were
consolidated for sentencing.

and he used the United States mail to carry out his fraud scheme.  *See* 4:04CR00041 SWW,

docket entry #30 (Superseding Information), docket entry #38 (Hearing Transcript).[2]

Moser used clients' money to invest in a company called Scanning Technologies, Inc.

When the investment failed, Moser concealed shortfalls in the client trust account by enticing

clients to retain money in the account and mailing them fictitious statements showing false

earnings and balances.  All the while, Moser continued to steal money from his clients for his

own use, to pay firm expenses and salaries, and to meet past and present obligations to clients.

*Id.*

The superseding information gave notice that upon Moser's conviction for mail fraud, he

would be required to forfeit, pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461, any property

constituting or derived from proceeds obtained directly or indirectly as a result of his crime.

Title 28 U.S.C. § 2461(c)[3] permits criminal forfeiture of proceeds from mail fraud and provides

---

[2]The Superseding Information charges that Moser's mail fraud activities took place "from at least as early as 1996 and continuing at least until 2004, the exact dates unknown." 4:04CR00041 SWW, docket entry #30.

[3]28 U.S.C. § 2461(c) reads as follows:

If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code.  The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.

28 U.S.C. 2461(c).

that the procedures set forth in 21 U.S.C. § 853 apply to all stages of the  criminal forfeiture

proceeding.  *See United States v. Jennings*, 2007 WL 1610476, *17 (8th Cir. June 6, 2007).   The

Court entered a preliminary and a second order of forfeiture in case number 4:04CR00041

identifying specific assets to be forfeited, and these orders of forfeiture were  made part of the

judgment and commitment order entered May 11, 2005.  *See* docket entry #82, 4:04CR00041

SWW.

On June 12, 2006, the United States filed, under seal, an application for seizure warrants

for funds  totaling $158,427.75  contained in pension and retirement  trust accounts  maintained

by Jewell.   In support of the applications, the United States submitted affidavits of  Dan Elliot, a

special agent with the IRS, who testified that funds directly traceable to the crimes committed by

Moser, and subject to forfeiture as proceeds of Moser's crimes, were deposited in Jewell's

accounts.

Moser and Jewell practiced law together at the Jewell and Moser Law Firm and, more

recently, at Jewell, Moser, Fletcher & Holleman, PA ("JMFH").  Elliot's affidavits state that

"[r]ecords and information from Moser and other witnesses support the position that Jewell had

knowledge of and took an active role in the embezzlement" and that  "a significant amount of

money has . . . been traced from the client trust account to Jewell through various bank accounts

and shell corporations that Jewell utilized to hide his true income."

Attached to Elliot's affidavits is a chart depicting a flow of money out of the JMFH client

trust account between 1999 and 2002, the time frame in which  Moser misappropriated client

funds from the account.  The chart shows money going from the client trust account into the

JMFH operating account and an account labeled JMF Enterprises, Inc., through various

intermediary accounts, and finally to Jewell's pension and retirement trust accounts.[4]

Based on Elliot's affidavit, the Court found probable cause to believe that funds in

Jewell's pension and retirement accounts were proceeds of Moser's crimes, and it issued the

requested seizure warrants, which were executed.  The United States moved to include the seized

funds in an amended order of forfeiture, and the Court granted the motion.

On July 14, 2006, Jewell filed a petition, pursuant to 21 U.S.C. § 853(n),[5]  opposing the

---

[4]The accounts are identified on the applications for seizure warrants and Elliot's affidavits as follows:

    A.  Jewell Law Firm Pension Trust, account #252662, balance $38,815
    B.  Legal Advantage Retirement Trust, account #252530, balance $44,819.46
    C.  Jewell Law Firm Retirement Trust, account #252603, balance $177,082.02 (Elliot's affidavit states that only $74,793.29 of this balance is traceable to the JMFH client trust account.)

[5]In *U.S. v. Timley*,  507 F.3d 1125 (8th Cir. 2007), the Eighth Circuit explained that there are only two avenues by which a party can prevail under § 853(n):

The claimant must either demonstrate priority of ownership at the time of the offense under § 853(n)(6)(A), or that he subsequently acquired the property as a bona fide purchaser for value under § 853(n)(6)(B).

Section 853(n)(6)(A)-the priority-of-ownership ground-embodies the relation-back doctrine. Under the relation-back doctrine, title to the forfeited property vests in the United States at the time of the defendant's criminal act. Nevertheless, a third party who had a legal interest in the forfeited property before the underlying crime was committed can prevail in the ancillary proceeding on the ground that he had an interest in the property before the government's interest vested.

Several years ago, Judge Canby wrote that a third party can never have a successful claim under § 853(n)(6)(A) if the property was the proceeds of an offense. *United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir.2000). As the court in Hooper explained, the proceeds of an offense do not exist before the offense is committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests. *Id*.

amended order of forfeiture and claiming a right to the seized account funds.  On December 21, 2006, Jewell filed a motion for summary judgment, asserting that the Government had not established a connection between Moser's crimes and the seized account funds.

On January 10, 2007, the United States filed a motion to stay discovery pending a criminal investigation of Jewell.  In support of its motion, the Government stated that United States Attorneys who searched for assets associated with Moser's crimes were unaware that other United States Attorneys had been considering criminal charges against Jewell.  The United States argued that discovery related to Jewell's petition should be stayed because it would impede the criminal investigation against Jewell.  Additionally, the Government argued that if discovery proceeded, it would be required to provide information without receiving reciprocal discovery because Jewell would assert the Fifth Amendment in response to discovery requests.

Jewell objected to a stay, and on February 14, 2007, he filed a second motion for summary judgment.   On March 12, 2007, the Government filed a response to Jewell's motions

---

Section 853(n)(6)(B), which provides the second possible ground to prevail at an ancillary hearing, is an exception to the relation-back doctrine. It provides that a person who acquired an interest in the forfeited property after the government's interest vested may nevertheless prevail in the ancillary proceeding if he was a bona fide purchaser for value.  This defense consists of the following three elements: (1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture.

Under this exception, even if the claimant establishes the first two elements, he will not prevail unless he satisfies the "reasonably without cause to believe" element of the statute.

*U.S. v. Timley* , 507 F.3d 1125, 1130 -1131 (8th Cir. 2007)(internal citations omitted).

for summary judgment, and on April 4, 2007, Jewell filed a reply.

Also on April 4, 2007, the United States filed an indictment charging Jewell with one count of conspiracy to commit mail fraud, three counts of money laundering, and one count of tax evasion.  *See United States v. Jewell*, 4:07CR00103 JLH, docket entry #1.   The indictment charges that Jewell took a major role in Moser's Ponzi-like scheme--that he converted client funds for his own use and used the United States mail to entice clients to place or leave their money in the client trust account.  The indictment also charges that Jewell obtained proceeds from the conspiracy to commit mail fraud and transferred the funds to pension and retirement trust accounts.

Pursuant to the third forfeiture allegation in the indictment against Jewell, the United States seeks forfeiture of the same pension and retirement funds at issue in this case as proceeds of Jewell's alleged money laundering.  *See United States v. Jewell*, 4:07CR00103 JLH, docket entry #1.  Because it appeared that the United States had shifted its theory of criminal forfeiture by charging that the account funds were proceeds of Jewell's money laundering, as opposed to Moser's mail fraud, the Court directed the government to file a brief explaining the basis for continued restraint of the account funds.  The Court noted that Jewell, though indicted, had not been convicted of any crime and that the United States had not  filed a motion for pretrial restraint of assets in the criminal case against Jewell.

On April 23, 2007, the  Government filed an application for a protective order in the separate criminal case against Jewell, requesting that the same account funds at issue in this case remain in the Treasury Suspense Account pending adjudication of the criminal charges against

Jewell. Pursuant to 21 U.S.C. § 853(e),[6] the Honorable Chief Judge Leon Holmes granted the Government's motion. Additionally, on April 26, 2007, the Government filed a complaint seeking civil forfeiture of the same account funds at issue in this case and the criminal case against Jewell. *See United States v. $158,428.26 in United States Currency,* 4:07CV00451 JLH, docket entry #1. Jewell filed a claim in the civil forfeiture case, asserting the right to defend the action as owner of the defendant property.

On July 10, 2007, the Court denied Jewell's motions for summary judgment filed in this case.[7] On January 5, 2007, the Court granted a joint motion by the United States and Jewell, requesting a stay of all proceedings related to Jewell's § 853(n) petition. The Court instructed the parties to inform the Court of any decision in the criminal action against Jewell or the related civil forfeiture proceeding that would necessitate proceeding with Jewell's petition in this case**.**

On May 23, 2007, Jewell filed a motion to vacate the protective order issued in the

---

[6]21 U.S.C. § 853(e )(1) authorizes pretrial restraint of "property described in subsection (a) of this section" if the court determines that there is a substantial probability that the United States will prevail on the issue of forfeiture, that failure to enter the order will result in the property being made unavailable for forfeiture, and that the need to preserve the availability of the property though a protective order outweighs the hardship on any party against whom the order is entered.

[7]In support of his first motion for summary judgment, Jewell asserted that the United States failed to establish the requisite nexus between his pension and retirement funds and Moser's crimes. However, the purpose of a proceeding under § 853(n) is to determine whether the claimant has legal interest in the property and whether he owned the property at the time of the offense or later acquired the property as a bona fide purchaser for value. *See U.S. v. Timley* , 507 F.3d 1125, 1130 -1131 (8th Cir. 2007)(internal citations omitted).

In support of his second motion for summary judgment, Jewell claimed that his pension and retirement trust accounts were funded through legitimate business transactions that took place after the commission of Moser's crimes. However, Jewell presented documentary evidence showing that the business transactions he claims funded the pension trust accounts occurred within the same time period that Moser carried on his fraud scheme.

criminal case against him, and on August 2, 2007, he filed a motion for summary judgment in the civil forfeiture case.   In support of both motions, Jewell argued that the seized account funds are protected from forfeiture under the prohibition of assignment or alienation of pension benefits set forth in § 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1), which provides:  "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

On March 6, 2008, Judge Holmes issued an order stating his finding that § 1056(d)(1)  precludes criminal or civil forfeiture of Jewell's pension and retirement funds, and he ordered the Government to return the funds seized from Jewell's  accounts.  *See United States v. Jewell*, 4:07CR00103 JLH, docket entry #37; *United States v. $158,428.26 in United States Currency,* 4:07CV00451 JLH, docket entry #33.[8]

## II.

Now before the Court is Jewell's motion to vacate the seizure warrants and orders of forfeiture entered in this case and for summary judgment.   Jewell contends that Judge Holmes' determination in the civil forfeiture proceeding, that the pension and retirement funds are protected from forfeiture under § 1056(d)(1), is conclusive and precludes re-litigation of the issue in this case.   For the reasons that follow, the Court agrees.

The doctrine of res judicata, or claim preclusion, promotes judicial economy by

---

[8]Because the seizure warrants issued in this case are still in effect, the Government did not return the funds to Jewell in compliance with the order.  Consequently, Jewell filed a motion for an order to show cause why the Government should not be held in contempt for failing to comply with the order to return the funds.  Chief Judge Holmes denied Jewell's motion and stayed his order entered March 6, 2008 until this Court's ruling on Jewell's motion to vacate, which is the subject of this order.

preventing litigants from bringing repetitive lawsuits based on the same cause of action. *See United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996)(citation omitted). "Res judicata bars a party from asserting a claim in court if three requirements are met: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Id.* (citations omitted).

Here, there is no question that first requirement is met. Additionally, Judge Holmes' order granting summary judgment in the civil forfeiture case qualifies as a final judgment on the merits, which satisfies the second requirement. The Government argues, however, that the third requirement is lacking because this case and the dismissed civil forfeiture proceeding do not involve the same cause of action. The Government's civil forfeiture claim and the criminal forfeiture claim in this case involve the same cause of action if they arise from the same nucleus of operative fact. *See Banks v. International Union Electronic, Elec., Technical, Salaried and Machine Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004)(citations omitted). The Eighth Circuit has adopted the position of the Restatement (Second) of Judgments in determining whether two causes of action are the same for res judicata purposes. *See Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990)(citations omitted). The Restatement (Second) of Judgments provides:

> The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Restatement (Second) of Judgments § 24, comment a at 197 (1980).

The ultimate basis for criminal forfeiture in this case is that the seized account funds are

proceeds of Moser's mail fraud crimes.  However, Elliot's testimony that Jewell participated in

embezzling client money, funneled the money through various accounts, and eventually

deposited the money in pension and retirement accounts provides the crucial link between

Moser's crimes and the seized account funds.  The Government advanced the same allegations in

support of its complaint for civil forfeiture, where it alleged that the account funds were

forfeitable as property involved in or traceable to Jewell's alleged money laundering.  *See United

States v. $159,429.46*, case no. 4:07CV00451 JLH, docket entry #1, ¶6.   And along with the

civil forfeiture complaint, the Government presented another affidavit by Elliot, which is almost

identical to his affidavit filed in this case.  *See id.*, Ex. A.  Because the Government's claims for

civil and criminal forfeiture arise from the same nucleus of operative fact, the Court finds that

the claims are the same for the purpose of res judicata.

The Government asserts that the judgment entered in the civil forfeiture action should not

preclude criminal forfeiture in this case because  the effect of the relation-back doctrine, set forth

in 21 U.S.C. § 853(n)(6)(A), was not at issue and never decided in the civil forfeiture case.

According to the Government, the relation-back doctrine trumps ERISA's anti-alienation

provision.

"The preclusion principle of res judicata prevents 'the relitigation of a claim on grounds

that were raised or could have been raised in the prior suit.'" *Banks v. International Union

Electronic, Elec., Technical, Salaried and Machine Workers*, 390 F.3d 1049, 1052 (8th Cir.

2004)(citing *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir.1990)).  The relation-back doctrine is

codified in many forfeiture statutes, both civil and criminal, including the statute under which the

Government sought civil forfeiture of the pension and retirement funds.  *See* 18 U.S.C. §

981(f)("All right title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission fo the act giving rise to forfeiture under this section.").  The  Government had a fair and full opportunity to litigate the relation-back issue in the civil forfeiture proceeding, but it failed to do so.

The Court finds that, pursuant to the doctrine of res judicata, forfeiture of the pension and retirement funds listed in the amended order of forfeiture is barred based on dismissal of the civil forfeiture proceeding  involving the same property.

### III.

IT IS THEREFORE ORDERED that Petitioner Jewell's motion to vacate seizure warrants and forfeiture orders and for summary judgment (docket entry #156, 4:04CR00041, docket entry #147, 4:04CR00016) is GRANTED.

IT IS FURTHER ORDERED that the seizure warrants issued on June 12, 2006 are vacated, and the amended order of forfeiture entered June 19, 2006 (docket entry #74, 4:04CR00016) shall be amended to omit the following property: (1) $38,815 in U.S. currency from the Jewell Law Pension Trust; (2) $44,819.46 in U.S. currency from the Legal Advantage Retirement Trust; and (3) $74,793.29 in U.S. Currency from the Jewell Law Firm Retirement Trust.

IT IS FURTHER ORDERED that the United States is directed to submit a proposed amended order of forfeiture consistent with this order within ten (10) days.

IT IS SO ORDERED THIS 2ND DAY OF MAY, 2008.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE